# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | |
|---|---|
| **GARY McDOWELL,** | ) |
| | ) |
| **Petitioner,** | ) |
| **v.** | )          **No. 13-2647-STA-tmp** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |

---

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
DENYING PETITIONER'S MOTION FOR JOHNSON RELIEF
DENYING PETITIONER'S MOTION FOR LEAVE TO AMEND
DENYING PETITIONER'S MOTION TO CORRECT
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

Before the Court is a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed by Petitioner Gary

McDowell ("McDowell"), Bureau of Prisons register number 13475-076, an inmate at FCC

Yazoo in Yazoo, Mississippi (§ 2255 Motion, ECF No. 1.)  For the reasons stated below,

McDowell's § 2255 Motion is **DENIED**.

## BACKGROUND

### I.      Criminal Case Number 10-20318

On September 22, 2010, a federal grand jury sitting in the Western District of Tennessee

returned an indictment against McDowell, charging him with one count of being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See* Indictment, *United States v.*

*Gary McDowell*, 2:10-cr-20318-STA (W.D. Tenn.), ECF No. 1.)   McDowell entered a plea of

not guilty, and the Court appointed the Federal Public Defender to represent McDowell.   The

case proceeded to a jury trial on July 11, 2011, and on July 13, 2011, the jury found McDowell

guilty of the charge.   On November 22, 2011, the Court sentenced McDowell to a term of

imprisonment of 120 months to be followed by three years' supervised release and imposed a

special assessment of $100.   (*See* Judgment, 2:10-cr-20318-STA ECF No. 67.)   McDowell

timely appealed the judgment.   On October 19, 2012, the United States Court of Appeal for the

Sixth Circuit affirmed McDowell's conviction.

### B.    Civil Case 13-2647

On August 20, 2013, McDowell filed his *pro se* § 2255 Motion, alleging that the Federal

Public Defender provided ineffective assistance in the plea bargaining process.   McDowell

amended his §2255 Motion (ECF No. 2, No. 2:13-cv-02647-STA) on November 13, 2013 and

explained in greater detail his contention that trial counsel gave him bad advice about his

sentencing exposure and overestimated the possible sentence McDowell could receive under the

applicable United States Sentencing Guidelines.   McDowell's primary complaint is that counsel

erroneously included one of McDowell's prior convictions in counsel's advisory calculations of

McDowell's offense level.   According to McDowell, his prior conviction for aggravated burglary

was the result of an Alford plea and therefore would not have counted in the scoring of

McDowell's offense level under the guidelines.   McDowell claims that counsel failed to

investigate the Alford plea and mistakenly included the prior offense in his explanation of

McDowell's possible sentence during the plea negotiation process.   As a result, counsel advised

McDowell that his base offense level would be 24 when in fact McDowell's base offense level

should have been 20 with the prior offense excluded from the calculation.   Counsel informed

McDowell that with a base offense level of 24, the low end of McDowell's sentencing range would be 84 months. According to McDowell, "[h]ad counsel investigated the defendant's base offense level was [sic] misapplied, defendant would not have proceeded to trial and would have accepted the plea agreement based on 57 to 71 months." (Mot. to Amend 3, ECF No. 2.)

On January 14, 2014, the Court entered an order directing the United States to respond to McDowell's Motion (ECF No. 4.) and subsequently granted the government's motion for an extension of time and motion to release trial counsel from the attorney-client privilege.[1] The United States filed an affidavit and supporting exhibits from the Assistant Federal Public Defender who represented McDowell (ECF No. 13) on August 20, 2014, and an Answer (ECF No. 14) to McDowell's petition on August 22, 2014. McDowell filed his Traverse (ECF No. 15) on September 23, 2014.

In the Assistant Federal Public Defender's affidavit (ECF No. 10-1), counsel gives his account of his plea negotiations with the government and the advice he provided McDowell prior to taking the case to trial. Shortly after McDowell's arraignment and counsel's receipt of discovery, counsel met with McDowell to discuss the case. Counsel presented McDowell with his initial sentencing guidelines calculations. McDowell discussed with counsel the prior aggravated burglary offense and the fact that McDowell's conviction was the result of an Alford plea. McDowell stated to counsel that he was willing to enter into a plea agreement if the United States would agree to a specific sentence of 77 months under Federal Rule of Criminal Procedure

---

[1] On July 8, 2014, McDowell filed a Motion for Show Cause Order (ECF No. 9), essentially objecting to the delay in the government filing trial counsel's affidavit. The government responded in opposition to the Motion and explained that counsel for the United States had met with the Assistant Federal Public Defender and prepared an affidavit for the FPD to sign. In light of the fact that the government has since filed the affidavit and its Answer to the petition, McDowell's Motion is **DENIED** as moot.

11(c)(1)(C). Counsel subsequently addressed a letter to McDowell dated March 9, 2011, which counsel has included as an exhibit to his affidavit. In the letter counsel advised McDowell about the government's plea offer, multiple sentencing scenarios applying the sentencing guidelines to the facts of McDowell's case and his criminal history, and case law to explain how McDowell's prior convictions might affect his sentence. Concerning the possibility of a plea agreement, counsel informed McDowell that the government was unwilling to agree to a specific sentence, as McDowell had requested. McDowell had also expressed concern to counsel about receiving a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. Counsel's advice in the letter to McDowell was to decline a plea agreement, consider pleading guilty to the indictment, preserve his right to appeal, and challenge all of the sentencing enhancements at sentencing.

On April 29, 2011, counsel met with McDowell, and they concluded that the "optimal" advisory guidelines sentencing range in McDowell's case would 84 to 105 months. Counsel advised McDowell that this range derived from a base offense level of 20 (before any enhancements) and the assumption that McDowell's prior aggravated burglary conviction would not be considered "violent." On May 4, 2011, counsel sent McDowell a letter to inform him that he was awaiting a response from the government to McDowell's plea offer with a specific sentence of 84 months under Rule 11(c)(1)(C).[2] The letter is an exhibit to counsel's affidavit. On May 10, 2011, counsel received an email from the Assistant United States Attorney confirming that the government would not agree to the 84-month sentence proposed by

---

[2] Counsel's letter also included another copy of the recording of the proceedings in state court, demonstrating that McDowell had, in fact, entered an Alford plea on the prior aggravated burglary charge.

McDowell. The United States was willing to agree to a federal sentence served concurrently with McDowell's sentence on related state charges. The email is included as an exhibit to counsel's affidavit.

Counsel made yet another attempt to obtain a plea agreement for an 84-month sentence to run concurrent to any state sentence on the related charge, which the government also refused. On June 30, 2011, counsel received one final offer from the United States, indicating that the United States Attorney would not pursue the second charge against McDowell under 18 U.S.C. § 924(c) and that McDowell could still receive the benefit of a 3-point reduction for acceptance of responsibility if he chose not to go to trial. According to counsel, McDowell refused the final offer and elected to go to trial.

At sentencing counsel successfully argued that McDowell's prior aggravated burglary offense should not count against him because of the Alford plea, resulting in a base offense level of 20, and not 24 as the probation officer's presentence report had recommended. Counsel also challenged the application of all enhancements and argued for a guidelines range of 63 to 78 months. The Court, however, rejected counsel's arguments against the application of the 2-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) for a stolen firearm and the 4-level enhancement under § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. The Court calculated McDowell's adjusted offense level at 26 and arrived at a criminal history category of V resulting in a guidelines range of 110 to 120 months, which was capped at the statutory maximum.

Counsel denies that the government ever offered a plea agreement based on any specific sentence or an agreement not to seek a 4-level enhancement under § 2K2.1(b)(6). Counsel opines that had McDowell changed his plea on the eve of trial and without an agreement with the

government, McDowell would have received a 3-level reduction at sentencing for acceptance of responsibility, yielding an adjusted offense level of 23 and a guidelines range of 84 to 105 months. Counsel also points out that 84 months was the same sentence McDowell had sought in negotiations with the United States. McDowell insisted, however, on an agreement for a specific sentence, which the government would not accept. Counsel states that he consistently advised McDowell the Court would likely apply the enhancements at sentencing.

In its response to McDowell's § 2255 Motion, the government argues that counsel's affidavit and the exhibits to the affidavit demonstrate that counsel actively negotiated for a plea agreement as McDowell requested. Or as the United States describes it, counsel "persisted in advocating his client's utopian strategy by which he could receive a specific sentence that fell well below his probable guideline range." Counsel's affidavit shows that the government never made the kind of plea offer of 57 to 71 months McDowell was willing to accept or, conversely, that the government was ever willing to accept such an offer from McDowell. McDowell has not carried his burden then to show that counsel's representation during the plea bargaining phase fell below the objective standard of care. Therefore, the Court should dismiss McDowell's petition.

McDowell has filed a traverse. McDowell cites relevant case law on ineffective assistance of counsel claims in the plea negotiation process and then reiterates his claim that counsel erroneously advised him that "his prior conviction for attempted burglary was a crime of violence for an increased sentence and base offense level." McDowell further states that he was "blindsided by the increased sentence for non-qualifying predicate." Had counsel investigated the offense, counsel would have learned that McDowell's prior conviction for attempted burglary did not constitute a "crime of violence" under *Begay v. United States*. McDowell goes on to argue that counsel provided advice on possible guidelines calculations but without "researching or taking the time to make sure

the guideline calculation estimate was correct." McDowell claims that he would have accepted a Rule "11(c)(1)(B) non-binding plea had counsel correctly advised him that he was not subject to a sentencing exposure of 151 to 188 months based on a prior crime of violence." McDowell next raises a claim that was not presented in his initial petition or his motion to amend the petition, namely, that counsel was ineffective for failing to argue at sentencing that McDowell could still receive the 3-level reduction for acceptance of responsibility. McDowell maintains that he only went to trial to preserve his appellate rights. Finally, McDowell argues that the Court should grant him summary judgment as to any claim the government failed to address in its Answer, though McDowell does not identify any such claim.

## STANDARD OF REVIEW

McDowell seeks habeas relief in this case pursuant to 28 U.S.C. § 2255(a). The statute reads as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[3] A § 2255 motion is not a substitute for a direct appeal.[4] "[N]onconstitutional claims that could have been

---

[3] *McPhearson v. United States*, 675 F.3d 553, 558-59 (6th Cir. 2012) (internal quotation marks omitted).

[4] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *see also Sunal v. Lange*, 332 U.S. 174, 178 (1947).

raised on appeal, but were not, may not be asserted in collateral proceedings."[5] "Defendants must assert their claims in the ordinary course of trial and direct appeal."[6] The rule, however, is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.[7]

Procedural default bars even constitutional claims that a defendant could have raised on direct appeal, but did not, by unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise the issues previously.[8]  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."[9]

Dismissal of a § 2255 motion is mandatory if the motion, exhibits, and the record of prior proceedings show that the petitioner is not entitled to relief.[10]  If the habeas court does not dismiss the motion, the court must order the United States to file its "answer, motion, or other

---

[5] *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

[6] *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

[7] *Id.*

[8] *See El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3dd 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).

[9] *Bousley v. United States*, 523 U.S. 614, 662 (1998); *Vanwinkle v. United States*, 645 F.3d 365, 369-70 (6th Cir. 2011).

[10] Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").

response within a fixed time, or take other action the judge may order."[11]  The petitioner is then entitled to reply to the government's response.[12]  The habeas court may also direct the parties to provide additional information relating to the motion.[13]  The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence.[14]

## ANALYSIS

### I. Ineffective Assistance of Counsel

McDowell's § 2255 Motion argues ineffective assistance of counsel based on counsel's advice during the plea bargaining phase about the possible sentence McDowell could receive under the applicable sentencing guidelines.  A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."[15]  "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[16]

---

[11] *Id.*

[12] Rule 5(d), Section 2255 Rules.

[13] Rule 7, Section 2255 Rules.

[14] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

[15] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[16] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[18] The petitioner must do more than prove that counsel's errors had "some conceivable effect on the outcome of the proceeding;" the "errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[19]   A claim of ineffective assistance of counsel is a mixed question of fact and law.[20]

"Surmounting *Strickland*'s high bar is never an easy task."[21]

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings,

---

[17] *Strickland*, 466 U.S. at 694.  Additionally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Id.*

[18] *Id.*

[19] *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to rule out [a more favorable outcome] to prevail.  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

[20] *McPhearson*, 675 F.3d at 559.

[21] *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.[22]

During plea negotiations a defendant is "entitled to the effective assistance of competent counsel," and *Strickland*'s two-part test applies.[23] As the Supreme Court has observed, "criminal justice today is for the most part a system of pleas, not a system of trials."[24] "To a large extent horse trading between prosecutor and defense counsel determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system."[25] Plea bargaining can be mutually beneficial to the state and the accused alike, allowing the former "to conserve valuable prosecutorial resources" and the latter "to admit their crimes and receive more favorable terms at sentencing."[26] "[P]lea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at

---

[22] *Richter*, 562 U.S. at 105.

[23] *Lafler*, 132 S. Ct. at 1384 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)); *see also Padilla* v. *Kentucky*, 559 U.S. 356, 373 (2010).

[24] *Id.* at 1388.

[25] *Missouri v. Frye,* 132 S. Ct. 1399, 1407 (2012) (quoting Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992) (internal ellipsis and brackets omitted)).

[26] *Id.*

critical stages."[27]  Otherwise, a defendant may be denied "effective representation by counsel at the only stage when legal aid and advice would help him."[28]

Having said that, "the duties and responsibilities of defense counsel in the plea bargain process have not been specifically defined . . . because the art of negotiation is nuanced, involves matters of personal style, and presents questions farther removed from judicial supervision."[29]  In the plea bargaining context, the defendant's burden to satisfy the performance prong of *Strickland* is to show "that counsel's representation fell below an objective standard of reasonableness."[30]  The defendant "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence."[31]  As for the prejudice prong, the defendant's burden is to "show the outcome of the plea process would have been different with competent advice."[32]

McDowell's claim is that trial counsel failed to advise him correctly about the calculation of McDowell's offense level under the guidelines and therefore failed to render effective assistance during the plea negotiations.  The gravamen of McDowell's complaint is that his correct base offense level under the guidelines was 20 but that counsel had advised of possible

---

[27] *Id.*

[28] *Massiah v. United States*, 377 U.S. 201, 204 (1964) (quoting *Spano v. New York*, 360 U.S. 315, 326 (1959) (Douglas, J., concurring)).

[29] *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (citing *Frye*, 132 S. Ct. at 1407–08).

[30] *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockhart,* 474 U.S. 52, 57 (1985)).

[31] *Pough*, 442 F.3d at 966 (quoting *United States v. Cieslowski,* 410 F.3d 353, 358-59 (7th Cir. 2005)).

[32] *Lafler*, 132 S. Ct. at 1384 (citing *Frye*).

sentencing scenarios based on a base offense level of 24. McDowell claims then that counsel's sentencing calculations overstated McDowell's possible sentence and that had counsel correctly advised McDowell about his possible sentence, McDowell "would have accepted the plea agreement based on the [sic] 57 to 71 months." The record before the Court clearly undercuts McDowell's claim.

The Court holds that McDowell has satisfied neither of *Strickland*'s prongs to establish that counsel rendered ineffective assistance during the plea bargaining process. The Sixth Circuit has remarked that "[i]n a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time."[33] The undisputed record shows that this is precisely what counsel did in this case. According to trial counsel's affidavit, he addressed a letter to McDowell on March 9, 2011, advising him about the status of the plea negotiations and McDowell's possible sentencing exposure under a plea agreement proposed by the United States. Counsel has attached a copy of the letter (ECF No. 13-1) to his affidavit, and the government has made both the affidavit and the March 2011 letter part of the record. Counsel's affidavit and the supporting materials attached to the affidavit "vigorously refut[e]" McDowell's contentions.[34]

---

[33] *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

[34] *Briggs v. United States*, 187 F. App'x 540, 545-46 (6th Cir. 2006) (citing *Smith*, 348 F.3d at 553).

Counsel's letter clearly demonstrates that counsel "ma[d]e a good-faith estimate of a likely sentence"[35] and "fully explained" McDowell's sentencing exposure" by "exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time."[36] The letter walked McDowell through the computation of his criminal history category and then laid out four detailed sentencing scenarios under the guidelines. Counsel's explanation assumed that one of McDowell's prior offenses, a 2008 conviction for attempted burglary, qualified as a "crime of violence" under the guidelines and resulted in a base offense level of 24. While McDowell correctly points out that his prior conviction was not a countable "crime of violence" under the guidelines, counsel's advice in March 2011 was "based on the documentary evidence I had received from the United States."[37] As counsel explained at sentencing, "the written documentation [concerning the 2008 aggravated burglary] that has been provided by the government and that exists in the record over at Shelby County Criminal Court has a written document that says that Mr. McDowell pled guilty to the offense set forth in paragraph 47 [of the PSR, i.e. the aggravated burglary in 2008], but I do have a disk here which [the AUSA] -- and I think -- I think [the AUSA] and I are in agreement on, that actually it was an Alford plea. The documentation itself was wrong."[38] Counsel produced the recording for McDowell and later made it an exhibit to the sentencing hearing. In light of the fact the discovery materials counsel received from the government contained an error, the Court holds that counsel's advice in March 2011 was objectively reasonable under the circumstances.

---

[35] *Pough*, 442 F.3d at 966.

[36] *Briggs*, 187 F. App'x at 545-46.

[37] Alden Aff. ¶ 4 (ECF No. 10-1).

Counsel's affidavit goes on to explain that after counsel determined from the recording that McDowell's conviction was the product of an Alford plea (even though the written court record did not evidence an Alford plea), counsel further determined that McDowell's correct base offense level was 20.[39] Counsel then used "this fact to attempt to negotiate an 11(c)(1)(C) agreement as the petitioner requested" right up until the eve of trial.[40] McDowell elected to go to trial after the government would not agree to a specific sentence as part of a Rule 11(c)(1)(C) plea agreement. Even so, counsel successfully argued at sentencing that McDowell's plea was an Alford plea and not countable as a prior offense for purposes of U.S.S.G. § 2K2.1(a)(4).[41] The Court concludes then that the record contains no "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

McDowell's briefing in his support his § 2255 Motion never concedes that counsel actually discovered the fact of the Alford plea. McDowell just asserts that "[h]ad counsel investigated that defendant's base offense level was misapplied as defendant had instructed him, defendant would not have proceeded to trial and would have accepted the plead agreement based on the 57 to 71 months. Even accepting as true McDowell's claim that counsel failed to investigate (a fact which is not supported by anything in the record other than McDowell's bare

---

[38] Sentencing Hr'g 22:7-15, Nov. 22, 2011 (ECF No. 70-3, no. 10-20318-STA).

[39] *Id.* at 22:7-25:8.

[40] Alden Aff. ¶¶ 6-8.

[41] McDowell alleges in his traverse that he was prejudiced at sentencing because "his prior conviction for attempted burglary was a crime of violence" and increased his "sentence and base offense level." McDowell further alleges that he was "blindsided by the increased sentence for [sic] non-qualifying predicate." The record belies any notion that McDowell's prior burglary offense caused him any prejudice at sentencing. Counsel argued, and the government agreed, that the

allegation) and that his failure to discover the recording sooner was somehow objectively unreasonable, McDowell has not shown how counsel's representation altered the outcome of the plea negotiations. McDowell asserts that he would have accepted a plea offer from the government for a guidelines range sentence of 57 to 71 months. However, McDowell has not shown that the government ever offered an agreement that would have yielded a guidelines range of 57 to 71 months. In fact, McDowell's conclusory claim is once again flatly contradicted by the record. Counsel's March 9, 2011 letter reported to McDowell that the United States had rejected his proposal for a Rule 11(c)(1)(C) plea where the United States would agree to a sentence of 77 months or any other specific sentence. The government later rejected McDowell's proposal for an agreed sentence of 84 months for the same reasons. These facts alone suggest that McDowell cannot establish how the plea bargaining would have resulted in his preferred outcome.

McDowell's claim about a guidelines range of 57 to 71 months is apparently derived from counsel's March 9, 2011 letter and one of the four sentencing scenarios counsel set out in the letter. Counsel explained to McDowell that the government would agree to a plea bargain with a 3-point reduction for acceptance of responsibility's but only if McDowell agreed to the 4-point enhancement under § 2K2.1(b)(6) and waived his right to appeal his sentence. U.S.S.G. § 2K2.1(b)(6)(B) provides for a 4-level increase if "the defendant used or possessed any firearm . . . in connection with another felony offense . . . ."[42] Counsel's letter explained that under the most favorable view of the guidelines, McDowell could accept the plea offer, receive a 3-point

---

burglary was not a qualifying predicate. McDowell has failed to show then how this "blindsided" him or had the effect of increasing his sentence.

[42] U.S.S.G. § 2K2.1(b)(6)(B).

reduction for acceptance of responsibility, and wind up with a guidelines range of 84 to 105 months. Counsel reached this conclusion assuming a criminal history category of IV and a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2).[43] That section provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."[44] But McDowell argues that counsel had incorrectly included in his base offense calculation McDowell's aggravated burglary with the Alford plea. Removing that prior felony would result in a base offense level of 20 under § 2K2.1(a)(4). With the 4-point increase under § 2K2.1(b)(6) and a three-point reduction for acceptance of responsibility, McDowell would have had an adjusted offense level level of 21, yielding a guidelines range of 57 to 71 months.

McDowell's case for such an outcome is merely hypothetical and ignores the other undisputed facts contained in the record. First and foremost, the Court found at sentencing that McDowell's criminal history category was V, and not IV, meaning that McDowell would not have received a sentence based on a criminal history of IV and a guidelines range of 57 to 71 months. Additionally, counsel's calculations in the March 2011 letter represented only one of several possible guidelines ranges and for that matter the very best case sentencing scenario described in the letter. Counsel made clear his concern that the most favorable outcome under his calculations, a guidelines range of 84 to 105 months, was not particularly likely under the circumstances. Counsel emphasized to McDowell that the statutory maximum for his offense

---

[43] The Court would note that at sentencing the Court found McDowell's criminal history category to be V, a fact which further shows that McDowell's guidelines range was never 57 to 71 months.

[44] U.S.S.G. § 2K2.(a)(2).

was 120 months and that under two more likely scenarios McDowell might end up with a maximum sentence. Counsel explained the possible calculations under a cross-reference for burglary, the most serious of which would yield a guidelines range of 168 to 210 months. Credit for acceptance of responsibility under the plea agreement proposed by the government would reduce that range to 121 to 151 months. Still, under either of these scenarios, McDowell faced the statutory maximum while negotiating away his right to oppose the 4-level enhancement at sentencing and then appeal the sentence. Counsel advised McDowell not to take the deal and instead consider pleading to the indictment so as to so leave open a challenge to the enhancement at sentencing, preserve his right to appeal his sentence, and still receive credit for acceptance of responsibility. Counsel informed McDowell that the government would not agree to a specific sentence as part of a Rule 11(c)(1)(C) agreement. In light of the state of affairs described in counsel's March 9, 2011 letter, McDowell has not shown that counsel's advice was objectively unreasonable under the circumstances or that the parties' plea bargaining would have resulted in a different outcome.

Likewise, none of the subsequent plea negotiations supports McDowell's claim about the possibility of a guidelines range of 57 to 71 months. Later correspondence between McDowell and counsel and counsel and the government shows that the government was never willing to agree to a specific sentence in McDowell's case as part of a plea agreement. In a May 4, 2011 letter (ECF No. 13-2), counsel wrote to McDowell that he had proposed to the AUSA a Rule 11(c)(1)(C) agreement for a sentence of 84 months. In an email exchange between counsel and the AUSA dated May 10, 2011 (ECF No. 13-3), counsel inquired about the proposed Rule 11(c)(1)(C) agreement for a sentence of 84 months, and the AUSA responded that the government could not "agree to an 11(c)(1)(C) sentence." There is simply no support for

McDowell's contention that he had an offer from the government that would have resulted in a guidelines range of 57 to 71 months and therefore that the outcome of the plea bargaining process would have been different. "[C]ounsel could not be ineffective for giving bad advice about, or not communicating, a nonexistent offer."[45] Therefore, McDowell's § 2255 Motion is **DENIED** on these grounds.

The record also refutes McDowell's ineffective assistance claim that proceeding to trial resulted in McDowell receiving a 4-level enhancement under § 2K2.1(b)(6). McDowell has offered no proof to show that the 4-point enhancement under § 2K2.1(b)(6) would not have applied, had he decided to plead guilty and avoid trial. The record clearly shows that the government insisted on the enhancement as part of any plea bargain. As previously discussed, the United States offered McDowell a deal in March 2011 whereby he would receive credit for acceptance of responsibility in exchange for an agreement to apply § 2K2.1(b)(6) and an appeal waiver. Other evidence shows that the government throughout the plea negotiations rejected McDowell's proposals for a Rule 11(c)(1)(C) agreement with a specific sentence. McDowell has not shown then how declining the government's plea offer and going to trial somehow led to the application of the 4-point enhancement under U.S.S.G. § 2K2.1(b)(6). Therefore, McDowell's § 2255 Motion is **DENIED** as to this issue.

In his final claim of ineffective assistance, McDowell alleges that counsel was ineffective for failing to argue at sentencing that McDowell could still receive the 3-level reduction for acceptance of responsibility. McDowell maintains that he only went to trial to preserve his appellate rights. U.S.S.G. § 3E1.1 allows for a downward departure in a defendant's offense level "[i]f the

---

[45] *Zoica v. Curtin*, No. 15-1996, 2016 WL 761915, at *2 (6th Cir. Feb. 26, 2016) (citing *Lafler,* 132 S. Ct. at 1387).

defendant clearly demonstrates acceptance of responsibility for his offense."[46] "The offense level reduction for acceptance of responsibility under section 3E1.1(a) . . . 'is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.'"[47] "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction."[48] Section 3E1.1 "stands for the proposition that a defendant is not ineligible for an acceptance of responsibility adjustment simply because he exercised his right to proceed to trial."[49] To qualify for this "rare" exception to the rule, a defendant must show that he went to trial to preserve a right that did not relate to factual guilt but all the while "clearly demonstrate[d] acceptance of responsibility for his criminal conduct."[50]

The Court holds that it was not objectively unreasonable for counsel to decide not to seek credit for acceptance of responsibility and that McDowell has failed to demonstrate prejudice from counsel's supposed failure to do so. McDowell states in his traverse that he only went to trial to preserve his right to appeal his sentence. In his direct appeal, McDowell challenged the admissibility of the *res gestae* evidence concerning McDowell's commission of a home invasion

---

[46] U.S.S.G. § 3E1.1(a).

[47] *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010) (citing U.S.S.G. § 3E1.1(a) cmt. n.2).

[48] U.S.S.G. § 3E1.1(a) cmt. n.2.

[49] *United States v. Sims*, 603 F. App'x 479, 485 (6th Cir. 2015); *see also United States v. Gray*, 641 F. App'x 462, 469–70 (6th Cir. 2016) ("Nor does exercising a right to a jury trial automatically foreclose an acceptance-of-responsibility reduction for a defendant.").

[50] U.S.S.G. § 3E1.1(a) cmt. n.2.

robbery.[51]  At no stage of the proceedings, even in this collateral attack, has McDowell admitted the facts of his offense or "clearly demonstrated" an acceptance of responsibility for his criminal conduct.  Therefore, even if counsel should have sought acceptance of responsibility credit at sentencing, McDowell has not shown why he would have been eligible for the credit or why the Court would have granted the motion.  Therefore, McDowell's § 2255 Motion is **DENIED** as to this issue.

## II. Claim for *Johnson* Relief

Following the briefing on McDowell's *pro se* § 2255, McDowell filed a *pro se* motion seeking to amend his petition and add a claim pursuant to *Johnson v. United States*, 135 S. Ct. 2251 (2015).  In his Motion to Supplement (ECF No. 20), McDowell argued that in light of *Johnson*, his prior felony for aggravated robbery was no longer a qualifying predicate to support an enhancement under U.S.S.G. § 2K2.1(a)(4).  On June 14, 2016, the Court appointed counsel to represent McDowell only as to his *Johnson* claim.  Counsel filed a brief on behalf of McDowell (ECF No. 24) on June 24, 2016.  McDowell apparently relies on the contents of the Presentence Investigation Report ("PSR") in his criminal case where the probation officer concluded that McDowell's prior aggravated burglary conviction in 2008 was a qualifying "crime of violence" for purposes of § 2K2.1(a)(2).[52]  McDowell contends that his aggravated

---

[51] *United States v. McDowell*, 502 F. App'x 558, 559 (6th Cir. 2012) (describing McDowell's single claim on appeal as "the district court improperly admitted, as *res gestae* or background, evidence regarding the home invasion robbery that precipitated him being charged with the gun possession offense").

[52] *See* Mem. in Support of Supp. § 2255, 2 (ECF No. 24-1) ("As was required at the time, the Court imposed a sentence that was enhanced under USSG § 2K2.1(a)(2), because Mr. McDowell had committed the § 922(g) offense after sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. (Presentence Investigation Report ('PSR'), at ¶ 19).").

burglary conviction no longer meets the sentencing guidelines' definition of a "crime of violence." According to McDowell, "[t]he definition of 'crime of violence' provided in the Guidelines under USSG § 4B1.2(a), contains a residual clause that is identical to the ACCA's residual clause." Therefore, the Court should apply *Johnson*'s reasoning to § 4B1.2(a) and conclude that McDowell's aggravated burglary conviction is no longer a "crime of violence." Pursuant to Administrative Order 2016-21, the United States Probation Office conducted an initial review of McDowell's claim under *Johnson v. United States*. On July 29, 2016, the probation officer submitted a memorandum to the Court, recommending that McDowell was not entitled to any relief under *Johnson*.

The Supreme Court in *Johnson* explained that the United States Code makes it a crime against the United States for certain classes of persons, such as convicted felons, to possess firearms and provides for a punishment of up to ten years' imprisonment.[53] The Armed Career Criminal Act increases the penalty for unlawful possession of a firearm where the offender has "three or more earlier convictions for a 'serious drug offense' or a 'violent felony'" and sets a minimum term of imprisonment of 15 years and a maximum of life.[54] The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[55] The

---

[53] *Johnson v. United States*, 135 S. Ct. 2251, 2255 (2015) (citing 18 U.S.C. § 924(a)(2)).

[54] *Id.* (citing 18 U.S.C. § 924(e)(1)).

[55] 18 U.S.C. § 924(e)(2)(B).

phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" has come to be known as the ACCA's residual clause.

In *Johnson*, the Supreme Court held that the residual clause was unconstitutionally void for vagueness.[56]  *Johnson* left the ACCA's use-of-force clause and enumerated offenses clause undisturbed.  In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court subsequently held that, as applied to ACCA cases, *Johnson* is a new substantive rule of constitutional law that has been made retroactive to cases on collateral review, and therefore, defendants can bring initial or successive 28 U.S.C. § 2255 petitions challenging their sentences enhanced under the ACCA's residual clause.

The Sixth Circuit has recently held that because the identical language of U.S.S.G. § 4B1.2's residual clause is unconstitutionally vague under *Johnson*, a sentencing court imposing a sentence after *Johnson* may not classify a prior conviction as a "crime of violence" under § 4B1.2's residual clause.[57]  And on June 27, 2016, the Supreme Court granted certiorari in *Beckles v. United States*, No. 15-8544, 2016 WL 1029080 (cert. granted June 27, 2016) agreeing to review the following issues: (1) whether *Johnson*'s constitutional holding applies to the residual clause in §4B1.2(a)(2); and (2) whether *Johnson v. United States* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in § 4B1.2(a)(2) (defining "crime of violence").  In recent published decision, the Sixth Circuit noted that *Beckles* would "presumably resolve the questions related to retroactive application of a new rule of constitutional law regarding the Guidelines—whether created by *Johnson* or by *Beckles*

---

[56] *Johnson*, 135 S. Ct. at 2257.

[57] *United States v. Pawlak*, —— F.3d ——, 2016 WL 2802723 (6th Cir. May 13, 2016).

itself—to cases" filed under § 2255.[58]  The Court of Appeals concluded that for the time being, "the most appropriate procedure is to transfer these cases to the district court with instructions to hold them in abeyance pending the Supreme Court's decision."[59]

In this case the Court finds it unnecessary to hold McDowell's *Johnson* claim in abeyance.  Contrary to McDowell's supplemental petition, the Court did not use his 2008 aggravated burglary conviction to enhance his sentence under U.S.S.G. § 2K2.1(a)(2).  It is true that the PSR treated McDowell's 2008 aggravated burglary conviction as a "crime of violence" under § 2K2.1(a)(2) and used the conviction to score McDowell's adjusted guidelines range. However, the Court did not adopt this portion of the PSR and instead accepted McDowell's argument at sentencing that his 2008 conviction for aggravated burglary was the result of an Alford plea and did not satisfy § 2K2.1(a)(2)'s definition of a "crime of violence." Because the Court did not consider McDowell's aggravated burglary conviction in deciding his sentence, McDowell has not shown why he is entitled to any relief under *Johnson* and its progeny. Therefore, McDowell's § 2255 Motion is **DENIED** as to this issue.

### III. Motion for Leave to Amend

On May 13, 2016, McDowell filed a *pro se* Motion for Leave to Amend (ECF No. 21). McDowell seeks leave to amend his § 2255 Motion and add a claim requesting jail credit for time served prior to his sentencing.  According to McDowell, he has pursued his administrative remedies to exhaust this issue with the Bureau of Prisons.  McDowell alleges ineffective

---

[58] *In re Patrick*, ⎯ F.3d ⎯⎯, No. 16-5353, 2016 WL 4254929, at *4 (Aug. 12, 2016).

[59] *Id.* (citing *In re Embry*, ⎯ F.3d ⎯⎯, No. 16-5447, 2016 WL 4056056, at *4 (6th Cir. July 29, 2016)).

assistance of counsel because his attorney failed at sentencing to "request credit for time already served in state custody" and otherwise should have taken steps to avoid "this predicament."[60]

The Court holds that McDowell's proposed amendment to his § 2255 Motion would be futile. The commencement and calculation of the term of incarceration of a federal prisoner, including any award of credits, is controlled by 18 U.S.C. § 3585, which states as follows:

> (a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.[61]

McDowell claims that counsel should have raised the credits issue at sentencing and that his failure to do so amounts to ineffective assistance. The Court notes that near the conclusion of his sentencing hearing, McDowell himself raised the issue of credits for time served in federal custody during his pretrial detention with the Court. McDowell stated to the Court that he was "trying to figure out what I need to do about getting credit for the time I've served and served in federal custody."[62] The Court explained to McDowell that the Bureau of Prisons would make that determination.[63]

---

[60] Mot. for Leave to Am. 5, 2 (ECF No. 21).

[61] 18 U.S.C. § 3585.

[62] Sentencing Hr'g 55:22-56:1.

To the extent that McDowell's claims that counsel should have argued at sentencing for jail credits for time served in federal custody, McDowell's claim is without merit. A court cannot grant or compute sentence credits under 18 U.S.C. § 3585(b) at sentencing or any other time.[64] The determination of whether a defendant is entitled to credit under § 3585 for time served is reserved for the Attorney General of United States and the Bureau of Prisons, not a sentencing court.[65] McDowell asserts that he has already exhausted his administrative remedies through the BOP as to the denial of credit for presentence detention. Assuming McDowell has exhausted administrative review of the BOP's computation or denial of credits, 28 C.F.R. §§ 542.10–542.16 (1997), the proper procedure is to seek judicial relief pursuant to 28 U.S.C. § 2241, not through a § 2255 motion.[66] Therefore, McDowell's Motion for Leave to Amend is **DENIED** as to the credit for his federal pre-sentencing detention but without prejudice to raise it in a properly filed habeas corpus petition under 28 U.S.C. § 2241.

To the extent that McDowell claims that counsel should have argued at sentencing for McDowell's federal sentence to run concurrently to his sentence under state law, the allegations in McDowell's Motion preclude such a claim. Under 18 U.S.C. § 3584(a), a district court may run a term of imprisonment concurrently or consecutively "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a

---

[63] *Id.* at 56:4-11.

[64] *United States v. Wilson,* 503 U.S. 329, 333 (1992) ("A district court, therefore, cannot apply § 3585(b) at sentencing.").

[65] *Id.*; *see also United States v. Lytle*, 565 F. App'x 386, 392 (6th Cir. 2014) (citing *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001)).

defendant who is already subject to an undischarged term of imprisonment."[67]  The Sixth Circuit has held, however, that a district court does not have the authority under § 3584(a) to run a federal sentence concurrent to a state sentence that has not yet been imposed.[68]  The undersigned sentenced McDowell on November 22, 2011.  McDowell asserts in his Motion for Leave to Amend that on January 4, 2012, the Shelby County Criminal Court sentenced him on the related state charge, specifically, aggravated robbery stemming from McDowell's involvement in the same home invasion robbery that formed the basis for the firearm charge against him under federal law.  In other words, the state court had not yet sentenced McDowell on his state charge at the time this Court sentenced him on his federal charge.  At the time of McDowell's sentencing on his federal conviction, this Court had no authority under 18 U.S.C. § 3584 to order McDowell's federal sentence to run concurrently with McDowell's as yet to be determined state sentence.[69]  Counsel was not ineffective for failing to raise a meritless argument at sentencing, and McDowell's proposed amendment would be futile.  Therefore, McDowell's Motion for Leave to Amend must be **DENIED**.

## IV. Rule 36 Motion or Rule 60(b) Motion to Correct

---

[66] *Wilson,* 503 U.S. at 333.

[67] 18 U.S.C. § 3584(a).

[68] *United States v. Quintero*, 157 F.3d 1038, 1039 (6th Cir. 1998) ("We hold that 18 U.S.C. § 3584(a) does not authorize district courts to order a sentence to be served consecutively to a not-yet-imposed state sentence.").

[69] McDowell concedes in his Motion for Leave to Amend that the state court ordered that his sentence on the state charge run concurrently with his federal sentence.

McDowell's remaining request for relief is Rule 36 Motion or Rule 60(b) Motion to Correct the PSR in his criminal case. McDowell states that the PSR reported his 2008 aggravated burglary conviction as a qualifying crime of violence. As the Court has already noted, the Court subsequently decided that McDowell's Alford plea in his aggravated burglary case precluded a finding that the charge was a "crime of violence" for purposes of the sentencing guidelines. McDowell now argues that the PSR's reference to the 2008 aggravated burglary charge has affected his custody classification. McDowell claims that the BOP has assessed custody classification points for violence. The points adversely impact McDowell's access to rehabilitation programs within the BOP. McDowell argues that intervening changes in the law have held that aggravated burglary falls under the guidelines' residual clause and therefore is not a "crime of violence." McDowell requests that the Court order the probation officer to file an addendum to the PSR noting that McDowell's aggravated burglary conviction was not a "crime of violence."

The Court holds that McDowell's request is not properly raised in a § 2255 Motion. "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[70] McDowell's claim concerns "the execution of the sentence than its imposition" and is therefore more properly raised as a claim for habeas corpus under 28 U.S.C. § 22441.[71] On the other hand, "[s]ection 2255 . . . has been conceived to be limited to those claims which arise from the imposition of the sentence as

---

[70] *McPhearson*, 675 F.3d at 558-59.

[71] *Wright v. United States Bd. of Parole,* 557 F.2d 74, 78 (6th Cir. 1977).

distinguished from claims attacking the execution of the sentence."[72]  Therefore, McDowell's Motion is **DENIED** but without prejudice to his right to raise the issue in a properly filed petition under 28 U.S.C. § 2241.

## V. Appeal Issues

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."[73]  No § 2255 movant may appeal without this certificate.  The COA must indicate the specific issue(s) that satisfy the required showing.[74]  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[75]  A COA does not require a showing that the appeal will succeed.[76]  Courts should not issue a COA as a matter of course.[77]

---

[72] *Id.* at 77; *cf. United States v. Jalili,* 925 F.2d 889, 893 (6th Cir.1991) ("Because defendant Jalili is challenging the manner in which the sentence was being executed, rather than the validity of the sentence itself, Section 2255 does not apply.").

[73] 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

[74] 28 U.S.C. §§ 2253(c)(2) & (3).

[75] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

[76] *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).

[77] *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, the issues raised by McDowell lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. Therefore, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.[78] Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).[79] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.[80] However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[81]

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED**.[82]

---

[78] *See Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

[79] *Id.* at 952.

[80] *See* Fed. R. App. P. 24(a)(1).

[81] *See* Fed. R. App. P. 24(a) (4)-(5).

## CONCLUSION

McDowell's claims of ineffective assistance of counsel lack substantive merit. McDowell's request for *Johnson* relief, Motion for Leave to Amend, and Motion to Correct are likewise not well taken. McDowell's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS SO ORDERED.**     **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 26, 2016.

---

[82] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.